[No. 40944. En Banc. November 19, 1970.]

THE STATE OF WASHINGTON, *on the Relation of Don Williams Export, Inc., Appellant,* v. ROBERT D. TIMM *et al., Respondents.*[*]

*Douglas A. Wilson* and *Glenn W. Toomey,* for appellant.

[*]Reported in 477 P.2d 15.

*The Attorney General, J. Richard Duggan* and *James R. Cunningham, Assistants,* for respondents Timm et al.

*Reaugh, Hart, Allison, Prescott & Davis, George H. Hart,* and *Jack R. Davis,* for respondents Hunt Transfer Co., Inc., et al.

SHARP, J.—This is a mandamus action against the Washington Utilities and Transportation Commission and its commissioners (hereinafter called the "commission") to compel transfer of a common carrier permit previously held by Big Bend Transport, Inc., to the appellant corporation, Don Williams Export, Inc. The appellant, itself a lawful holder of a common carrier permit issued by the commission, entered into a plan of merger with Big Bend Transport, Inc., holder of permit No. 1991, whereby appellant became the surviving corporation. Upon filing of the plan of merger and the issuance of a certificate of merger by the Secretary of State on April 8, 1968, appellant notified the commission, requesting that its records be conformed to show appellant as the holder of permit No. 1991. This the commission declined to do, and this action followed. The trial court, hearing the matter upon stipulated facts, denied the writ.

The issue before the court is simply stated: Did the provisions of the Washington Business Corporation Act, enacted in 1965 and effective July 1, 1967, relating to merger or consolidation of corporations (RCW 23A.20.060(4)) require, to the exclusion of the provisions of the Motor Carrier Act relating to assignment and transfer of permits, RCW 81.80.270, the reissuance of permit 1991 to appellant?

The provision of the Business Corporation Act relied on by appellant reads as follows:

RCW 23A.20.060. Effect of merger or consolidation. Upon the issuance of the certificate of merger or the certificate of consolidation by the secretary of state, the merger or consolidation shall be effected.

When such merger or consolidation has been effected:
. . .
(4) Such surviving or new corporation shall thereupon

and thereafter possess all the rights, privileges, immunities, and franchises, as well of a public as of a private nature, of each of the merging or consolidating corporations; and all property, real, personal and mixed, and all debts due on whatever account, including subscriptions to shares, and all other choses in action, and all and every other interest of or belonging to or due to each of the corporations so merged or consolidated, shall be taken and deemed to be transferred to and vested in such single corporation without further act or deed; and the title to any real estate, or any interest therein, vested in any of such corporations shall not revert or be in any way impaired by reason of such merger or consolidation.

The Motor Freight Carrier Act provision, then in effect, and relied upon by the commission reads as follows:

RCW 81.80.270. Transfer, assignment of permits—Acquisition of carrier holding permit. No permit issued under the authority of this chapter shall be construed to be irrevocable. Nor shall such permit be subject to transfer or assignment except upon a proper showing that property rights might be affected thereby, and then in the discretion of the commission, and upon the payment of a fee of twenty-five dollars.

No person, partnership or corporation, singly or in combination with any other person, partnership or corporation, whether a carrier holding a permit or otherwise, or any combination of such, shall acquire control or enter into any agreement or arrangement to acquire control of a common or contract carrier holding a permit through ownership of its stock or through purchase, lease or contract to manage the business, or otherwise except after and with the approval and authorization of the commission: *Provided,* That upon the dissolution of a partnership, which holds a permit, because of the death, bankruptcy, or withdrawal of a partner where such partner's interest is transferred to his spouse or to one or more remaining partners, or in the case of a corporation which holds a permit, in the case of the death of a shareholder where a shareholder's interest upon death is transferred to his spouse or to one or more of the remaining shareholders, the commission shall transfer the permit to the newly organized partnership which is substantially composed of the remaining partners, or continue the corporation's permit without making the proceeding subject to hearing and protest. In all other cases any such transac-

tion either directly or indirectly entered into without approval of the commission shall be void and of no effect.

Every carrier who shall cease operation and abandon his rights under the permits issued him shall notify the commission within thirty days of such cessation or abandonment, and return to the commission the identification plates issued to him. [Laws of 1965, Ex. Ses., ch. 134, § 1, p. 2197.]

Many of the arguments presented by appellant to the trial court and in its opening brief to this court were affirmatively withdrawn in its reply brief and in oral argument before this court. Thus, the parties now agree that RCW 81.80.270 is not ambiguous, that the two statutes do not conflict, and that the time sequence of their passage by the legislature is irrelevant. Instead, appellant's position is that the Motor Carrier Act is inapplicable and that upon issuance of the certificate of merger by the Secretary of State, admittedly a ministerial act on his part, the absorbed corporation's permit transferred to the surviving corporation by operation of law by virtue of the above-quoted merger provision of the Business Corporation Act.

■ The Washington Business Corporation Act, enacted in 1965, is a broad, general act patterned after the American Bar Association's Model Business Corporation Act, enabling and prescribing the conduct of business activity within the framework of the corporate entity form. While it does contain substantive changes from the prior corporate law, many of its provisions are reenactments of existing statutes. Thus RCW 23A.20.060, first enacted by our legislature in 1933 (Laws of 1933, ch. 185, §§ 45 and 46, pp. 805 and 806), was reenacted without substantial change as part of the 1965 act.

Motor carrier regulation was first undertaken by our legislature in 1921, and today the Motor Carrier Act appears as a comprehensive legislative program for the regulation of all motor carriers operating in intrastate commerce. Its declaration of policy indicates the legislative concern for a business affected with a public interest.

RCW 81.80.020. Declaration of policy. The business of operating as a motor carrier of freight for compensation

along the highways of this state is declared to be a business affected with a public interest. The rapid increase of motor carrier freight traffic and the fact that under the existing law many motor trucks are not effectively regulated have increased the dangers and hazards on public highways and make it imperative that more complete regulation should be employed to the end that the highways may be rendered safer for the use of the general public; that the wear of such highways may be reduced; that congestion on highways may be minimized; that the shippers of the state may be provided with a stabilized service and rate structure; that sound economic conditions in such transportation and among such carriers may be fostered in the public interest; that adequate, economical, and efficient service by motor carriers, and reasonable charges therefor, without unjust discrimination, undue preferences or advantages, or unfair or destructive competitive practices may be promoted; that the common carriage of commodities by motor carrier may be preserved in the public interest; that the relations between, and transportation by and regulation of, motor carriers and other carriers may be improved and coordinated so that the highways of the state of Washington may be properly developed and preserved, and the public may be assured adequate, complete, dependable and stable transportation service in all its phases.

Basic to this regulatory plan is the requirement that operating permits shall be issued only upon proper commission findings that the applicant is fit, willing and able properly to perform the services proposed and that such operations will be consistent with the public interest and, in the case of common carriers, that the service will be required by the present or future public convenience and necessity. RCW 81.70.070. The commission is charged with the responsibility for fostering a stable, competitive climate rather than one of unrestrained competition.

It is true that the applicant has the burden of proving that additional service is required by public convenience and necessity. Whether the burden has been met is for the WUTC to decide. The determination that future public convenience and necessity will be served by reason of competition is one of the inherent functions of the commission performing its discretionary duties, and comes

directly within the purview of the philosophy of administrative expertise in determining such matters. The weight and value of the inferences to be drawn from the testimony is for the WUTC to determine. The determination of the WUTC should not be overturned by the court when the WUTC has acted within the scope of its expertise and competence and is supported by material evidence in the record.

*Black Ball Freight Serv., Inc. v. State Util. & Transp. Comm'n,* 74 Wn.2d 871, 447 P.2d 597.

Since 1921 the commission has also been charged with the responsibility for approving prospective assignees or transferees of outstanding permits.

> Any right, privilege, certificate held, owned or obtained by an auto transportation company may be sold, assigned, leased, transferred or inherited as other property, only upon authorization by the Commission.

Laws of 1921, ch. 111, § 4, p. 341.

In 1933, the wording, but not the underlying intent, was changed to read:

> No permit issued under the authority of this act shall be subject to assignment or transfer. No permit issued in accordance with the terms of this act shall be construed to be irrevocable.

Laws of 1933, ch. 166, § 8, p. 618.

This provision has been retained through amendatory and supplementary legislation without material change until today, where it appears in the first paragraph of RCW 81.80.270. While the Motor Carrier Act is silent on the specific standards to be applied by the commission in transfer of permit proceedings, the commission has applied a public need, public interest test which is well within its delegated authority. *Herrett Trucking Co. v. State Pub. Serv. Comm'n,* 61 Wn.2d 234, 377 P.2d 871. Additionally, the legislature, since 1959 (Laws of 1959, ch. 248, § 24, p. 1150), has prohibited, without prior commission approval, the transfer of permits or acquisition of control by *indirect means:*

> No . . . corporation . . . shall acquire control or enter into any agreement or arrangement to

acquire control of a . . . carrier holding a permit through ownership of its stock or through purchase, . . . *or otherwise* except after and with the approval and authorization of the commission . . .

(Italics ours.) Laws of 1965, Ex. Ses., ch. 134, § 1, p. 2197. (RCW 81.80.270.)

It is this wording which the appellant originally claimed was ambiguous, but now claims is inapplicable. Appellant points out that the word "merger" does not appear therein, but does specifically appear in RCW 23A.20.060 of the Business Corporation Act. But this argument not only overlooks the purpose underlying regulatory control of motor carrier permits, as opposed to the purpose of the Business Corporation Act, but ignores the above-quoted language itself. Here, the absorbed corporation, Big Bend Transport, Inc., transferred its stock and assets to Don Williams Export, Inc., in return for stock in appellant, as surviving corporation.

The plan of merger, admitted as exhibit 2 in this proceeding, provides in part as follows:

1. Big Bend Transport Co., Inc., a Washington corporation, proposes to merge into and with Don Williams Export, Inc., a Washington corporation, which is hereafter designated as the Surviving Corporation. The terms and conditions of the proposed merger are as follows:

(a) All of the assets of Big Bend Transport Co., Inc. shall be transferred to and become a part of Don Williams Export, Inc., and Don Williams Export, Inc. shall assume all of the debts, liabilities and contracts of the constituent corporations, both the Merging Corporation and the Surviving Corporation, and shall pay off and extinguish all debts and liabilities of every kind and nature of each constituent corporation.

In our opinion, Don Williams Export, Inc., entered into an agreement and arrangement to acquire control of Big Bend's permit "through purchase or otherwise" within the terms of RCW 81.80.270. Even though the transaction is classified as a merger, this terminology does not exempt it from prior commission approval.

Appellant also argues that the commission itself, by its

rules, particularly rule 10,[1] recognizes that in the event of merger the permit transfers by operation of law. We do not agree. The rule merely exempts those certain transfers of permits enumerated in the provisos of RCW 81.80.270 and RCW 81.80.272, resulting from the death, bankruptcy, or withdrawal of a partner or a shareholder of a permittee company, from the customary hearing and protest provisions of the rules. Were the rule to be construed as suggested by the appellant, it would exceed the commission's rule-making power.

The appellant calls our attention to the trial court's conclusion of law No. 6 reading as follows:

> The merger effected on or about March 22, 1968, was valid and effective for all purposes, excepting only for the transfer of Common Carrier Permit No. 1991, said transfer being subject to the approval of the Washington Utilities and Transportation Commission, notwithstanding the provisions of RCW 23A.20.060.

If the merger is valid and effective, appellant argues, then the permit transfers to the surviving corporation automatically by operation of law. While the record indicates that the respondent prepared and presented the findings of fact and conclusions of law entered by the court, has not cross-appealed, and assigned no error to conclusion No. 6, respondent now challenges this conclusion as to the validity

---

[1]Rule 10. *Permit Rights, Transfer of* (Effective January 1, 1968, now codified as WAC 480-12-050).

(c) Application for transfer of permit rights shall be subject to the docketing, hearing, and protest provisions of Rule 9, except as provided in Rule 10(i).

. . .

(h) If protest to a transfer application also alleges that the rights sought to be transferred, or any part thereof, are not reasonably active and regularly used, the Commission shall issue an order to show cause requiring the permit holder to furnish proof of the extent to which his or its permit rights are reasonably active and regularly used. Hearing on show cause proceedings shall be held in accordance with the provisions of Rule 10A.

(i) The provisions of paragraphs (c) and (h) shall not apply to the following:

(1) Transfers by operation of law, such as by inheritance, or devise. (See Sections 81.80.270 and 81.80.272 RCW.)

and effectiveness of the merger as being outside of the issues framed by the pleading and as a gratuitous conclusion collateral to the main issue. However, over 2 years have elapsed since its entry without prior or subsequent objection by respondent. All of Big Bend's physical assets and liabilities have been assumed by appellant. The record before us being in this posture, we accept the validity and effectiveness of the merger itself, as being the law of this case. However, we also accept the remainder of conclusion of law 6 requiring commission approval for the transfer of permit No. 1991, this being the sole issue before the trial court.

Appellant next draws our attention to RCW 81.12 pertaining to transfers of property of certain public service companies. Under this chapter the public service companies therein defined are prohibited from (among other things) transferring franchises or merging or consolidating without commission approval. The chapter specifically provides, however, that it shall not be applicable to common carriers subject to the Interstate Commerce Act, garbage and refuse collection companies subject to RCW 81.77 and motor freight carriers subject to the provisions of chapter 81.80.[2] From this appellant concludes that it was the legislature's intention to exclude motor freight carriers from the requirements of prior commission approval in the event of merger. But no such intention appears, for RCW 81.12.010 specifically provides that nothing therein shall relieve public service companies from the necessity for compliance with RCW 81.80.270. The clear purpose and intent of chapter 81.12 is to define commission responsibility in the event of transfer of properties of those public service companies not specifically covered by separate and distinct chapters of our public service company law.

Finally, appellant points out that after the trial of this

---

[2] The 1969 legislature added storage warehousemen subject to the provisions of chapter 81.92 and wharfingers and warehousemen subject to the provisions of chapter 81.94 to the list of public service companies exempted from the provisions of RCW 81.12. (Laws of 1969, Ex. Ses., ch. 210, § 4, p. 1589.)

cause, the legislature saw fit to clarify the issue by adding a new section to the Business Corporation Act as follows:

Nothing contained in this Title shall be construed to limit or repeal additional requirements imposed by statute on corporations subject to the jurisdiction of state regulatory agencies.

Laws of 1969, Ex. Ses., ch. 83, § 4, p. 738.

This indicates to the appellant that at the time of the merger a loophole existed which was closed by the foregoing amendment. However, we agree with the respondent in interpreting the amendment as a mere clarification of original legislative intent. *State ex rel. Oregon R. & Nav. Co. v. Clausen,* 63 Wash. 535, 116 P. 7 (1911). 1 J. Sutherland, Statutes and Statutory Construction 416-419, §§ 1931, 1932 (Horack 3d ed. 1943).

We affirm the trial court.

ALL CONCUR.