[No. 40059.    En Banc.    January 8, 1971.]

DIAMOND PARKING, INC., *Respondent,* v. THE CITY OF SEATTLE, *Appellant.*\*

*\*Reported in 479 P.2d 47.

*A. L. Newbould* and *E. Neal King*, for appellant.

*Lycette, Diamond & Sylvester*, by *William J. Millard, Jr.*, for respondent.

ROSELLINI, J.—The City of Seattle requires that any operator of a public garage within the city obtain a license. Such licenses had been issued to City Parking, Inc., United Parking, Inc., and Diamond Parking, Inc. The same persons owned the shares of these corporations and served as officers and directors. In October, 1966, the three merged, with Diamond Parking, Inc., as the surviving corporation. The appellant city demanded that license fees be paid on the locations previously owned by the other two corporations for the unexpired period covered by the licenses which it had issued to the two merged corporations which had owned them.

The respondent, Diamond Parking, Inc., instituted this action to restrain the collection of the license fees and for a declaratory judgment declaring that section 5 of ordinance 48022 of the City of Seattle (Seattle Code 10.02.050) is inapplicable to the respondent under these facts. The trial court granted its motion for summary judgment and denied that of the appellant.

The ordinance in question provides:

> No license issued under the provisions of this chapter shall be transferable or assignable, unless specifically otherwise provided for.

Seattle Code 10.02.050.

The respondent contends, and the trial court found, that this ordinance is in conflict with RCW 23.01.500 (which has been superseded by RCW 23A.20.060), which provides, insofar as pertinent:

> Upon the consummation of the merger or consolidation as provided in RCW 23.01.490, the effect of such merger or consolidation shall be:
> . . .

(3) The surviving or new corporation, as the case may be, shall possess all the rights, privileges and franchises possessed by each of the former corporations so merged or consolidated except that such surviving or new corporation shall not thereby acquire authority to engage in any business or exercise any right which a corporation may not be formed under this chapter to engage in or exercise;

(4) All the property, real, personal and mixed, of each of the constituent corporations, and all debts due on whatever account to any of them, including subscriptions for shares and other choses in action belonging to any of them shall be taken and be deemed to be transferred to and invested in such surviving or new corporation, as the case may be, without further act or deed;

(5) The surviving or new corporation shall be responsible for all the liabilities and obligations of each of the corporations merged or consolidated, in the same manner as if such surviving or new corporation had itself incurred such liabilities or obligations; but the liabilities of such constituent corporations or of their shareholders, directors or officers shall not be affected, nor shall the rights of the creditors thereof, or of any persons dealing with such corporations be impaired by such merger or consolidation, and any claim existing or action or proceeding pending by or against any of such constituent corporations may be prosecuted to judgment as if such merger or consolidation had not taken place, or the surviving or new corporation may be proceeded against or substituted in its place.

RCW 23.01.460 authorizes any two or more domestic corporations to be merged into one of such corporations or consolidated into a new corporation.

If the licenses formerly held by City Parking, Inc., and United Parking, Inc., constituted rights, privileges or franchises, they were transferred to Diamond Parking, Inc., by operation of law under the provisions of this chapter.

■■ A license is a right granted by some authority to do an act which, without such license, would be unlawful. *State v. Lake City Bowlers' Club, Inc.,* 26 Wn.2d 292, 173 P.2d 783 (1946). The appellant's suggestion that the licenses which it granted were not "rights, privileges or franchises" is untenable.

We are confronted, therefore, with two conflicting provisions upon the same subject matter. The statute says that the rights of a merging corporation shall pass to the surviving corporation, along with the obligations and liabilities. It was the evident legislative intent, in enacting these provisions, to encourage the continuation of businesses so that their obligations can be discharged. A corporation cannot reasonably be expected to discharge its obligations and liabilities if it is deprived of its valuable assets, and the value of a license in carrying on a business can hardly be questioned.

The appellant, however, has asserted that it has the authority to prevent the passing of this right, by virtue of its ordinance forbidding transfers. It cites a number of cases in which this court has held that local ordinances which are in apparent conflict with state statutes will be harmonized and given effect if at all possible. However, it is unsuccessful in presenting a theory by which these two provisions can be viewed as compatible. The statute does not provide that the surviving corporation shall succeed to the rights, privileges and franchises of the merged corporations, provided those rights, privileges and franchises are made assignable by the authority which granted them. It provides, without condition, that they shall pass upon the merger.

We have stated that the plenary police power in regulatory matters accorded municipalities by Const. art. 11, § 11, ceases when the state enacts a general law upon the particular subject, unless there is room for concurrent jurisdiction. *United States Fidelity & Guar. Co. v. Montesano,* 160 Wash. 565, 295 P. 934 (1931), and *Levinson v. Linderman,* 51 Wn.2d 855, 322 P.2d 863 (1958). *See Lenci v. Seattle,* 63 Wn.2d 664, 388 P.2d 926 (1964).

We are of the opinion that the conflict here is irreconcilable. If the ordinance is given the effect for which the appellant contends, the legislative purpose is necessarily thwarted.

An argument is made by the respondent, in support of the judgment, that the passing of the rights by operation of

the statute is not a transfer at all. While it is true that the rights do not pass to individuals having a different identity, they do pass to a different corporate structure and we are not prepared to say that no transfer takes place. Rather, the transfer is one which the legislative authority of a municipality cannot regulate or forbid.

If the City of Seattle can deny a license to the respondent for no other reason than that it does not approve the merger, as the appellant suggests that it can, then it has in effect passed an ordinance which changes the law of corporations. Const. art. 12, § 1, places the responsibility for passing laws relating to the formation of corporations in the legislature, which alone has the right to change those laws. RCW 23A.20.010 provides that any two or more domestic corporations may merge into one of such corporations pursuant to a plan of merger approved in that title. Under the appellant's theory, the right given in that section can be taken away by a city which does not approve of the particular merger.

■ Of course, there are mergers which are forbidden by law, both federal and state. For example, the Sherman Anti-Trust Act (15 U.S.C. § 1) prohibits combinations which are in restraint of trade. Const. art. 12, § 16, prohibits railroads from consolidating with competing lines, and Const. art. 12, § 22, forbids combinations for the purpose of fixing the price, limiting the production, or regulating the transportation of any product. RCW 19.86.030 makes combinations in restraint of trade unlawful. But we know of no authority for the proposition that local governments can prohibit consolidation or mergers of corporations. The organization of corporations is a matter of state concern, rather than one of local concern, and while the local governments can impose reasonable regulations which do not conflict with state laws, they cannot validly enact measures which interfere with the uniform operation of laws enacted by the legislature.

■■ In RCW 35.22.280(33), cities of the first class are given the power to grant licenses for any lawful purpose, to fix the amount to be paid therefor, and to provide for

revoking the same. This paragraph has a proviso that no license shall be granted to continue for longer than 1 year from the date thereof.

The language of this provision is not broad enough to give the city the right to exact an additional fee when a licensee corporation merges with another corporation. While the appellant may have the right to make a license nontransferable, a provision of this kind must be in harmony with the general law. If it provides that a license does not pass by merger, a conflict results.

Under the provisions of the business corporation act, a corporation merging is not destroyed but is rather absorbed by the surviving corporation. In 15 W. Fletcher, Cyclopedia of the Law of Private Corporations § 7086 (rev. ed. 1961), the author says:

> A consolidation or merger of two or more solvent corporations does not contemplate a winding up of the business of the old corporations and a distribution of their property. In fact, the very object of the transaction and of the statutes which permit it is to continue the business of the old companies. And commonly, when different corporations are consolidated, the franchises, rights and properties continue their existence, to be enjoyed and exercised by the new or enlarged corporate entity.
> . . .
> If there is no provision to the contrary in the statute or the agreement between the parties, the general rule, based upon the presumed intention of the legislature and the corporations, is that the consolidated corporation acquires by the consolidation all the rights, franchises, privileges and property of the consolidating corporations, subject to the same burdens and restrictions which attached thereto in the hands of the consolidating corporations, respectively, under their charters.

If a surviving corporation must pay an additional license fee in order to continue to enjoy a license lawfully acquired by one of the merging corporations, an additional burden is attached. It is not acquired subject to the *same* burdens and restrictions which attached thereto in the hands of the consolidating corporations.

Not only does the exacting of this fee deny to the surviv-

ing corporation the right granted by statute—a right which it must enjoy if it is justly to be required to discharge all of the obligations and liabilities of the corporation which originally acquired the license—but it is in effect a tax upon the merger itself.

■ One purpose of the licensing ordinance is, of course, to secure revenue. The city has the right to exact license fees for this purpose (*Pacific Tel. & Tel. Co. v. Seattle,* 172 Wash. 649, 21 P.2d 721 (1933)), but the fees must be uniform (Const. art. 7, § 1 (amendment 14)) and the imposition of an additional license fee under the circumstances of this case results in the respondent's being required to pay twice for a privilege for which others are charged only once. Apparently recognizing the inequity of imposing an additional license fee purely for revenue purposes, the appellant insists that its purpose is to regulate rather than to tax. It maintains that, if it cannot control this transfer of its licenses, its police powers will be unreasonably curtailed.

Section 13 of ordinance 48022, as amended by ordinance 93051, § 3 (Seattle Code 10.02.1207), provides that an application shall be granted (except as otherwise provided therein) unless the applicant is found to be dishonest or immoral or desires the license in order to engage in dishonest, unlawful or immoral acts or enterprises, or unless the premises do not comply with requirements of any ordinance relating to fire, buildings, health and sanitation or is in violation of the zoning ordinance.

Since, in a merger, a new business is not created but an old one is merely continued, and the qualifications of the old business have already been passed upon by the licensing authority, there is no change effected by the mere merger which will provide any ground for revoking the existing license. And if some consideration other than the merger itself dictates a revocation of the license, that can be effected under the authority of RCW 35.22.280(33) and ordinance 48022, § 14, as amended by ordinance 73016, § 1, which provides:

In addition to other penalties provided by law, the city council reserves unto itself the right to revoke or sus-

pend any license issued under the provisions of this title at any time . . . for the violation of, or failure to comply with, any of the provisions of this title . . .

Seattle Code 10.02.130.

As the trial court observed in its memorandum opinion, there are many other ordinances under which the city can exercise its police power in relation to violation of fire, building, health and sanitation codes. Denying the city the right to exact an additional license fee when a corporation is merged does not in any way inhibit the exercise of its police power.[1]

We are aware that in the recent case of *State ex rel. Don Williams Export, Inc. v. Timm,* 78 Wn.2d 520, 477 P.2d 15 (1970), we held that the transfer of a common carrier permit from a merging corporation to the surviving corporation is subject to the approval of the Utilities and Transportation Commission under RCW 81.80.270. We were there concerned with two statutes which pertained to the same subject matter, not a statute and an ordinance, as we are here. Furthermore, when it came to this court, the corporation abandoned the theory that the statutes were in conflict and instead relied upon a contention that a transfer between two merging corporations is not covered by the language of RCW 81.80.270.

If there was indeed a conflict between the two statutory provisions, the result which we reached was nevertheless correct. The business corporation statute is a general law, while the statute regulating carriers deals specifically with corporations engaged in transportation, and under the applicable rule of statutory construction would prevail over the general statute. *ITT Rayonier, Inc. v. Hill,* 78 Wn.2d 700, 479 P.2d 729 (1970). The consent or approval of a designated commission, board, or officer representing the state or federal government is very often required by law

---

[1] In the present case, of course, all of the merging corporations were licensed, and the city does not suggest that there was any reason to suspect that any of these licenses had been abused, or would be in the future. We are advised that the respondent is currently licensed to carry on its business.

when certain classes of corporations desire to merge or consolidate. 15 W. Fletcher, Cyclopedia of the Law of Private Corporations § 7053 (rev. ed. 1961).

The legislature in 1969 amended RCW 23A by the addition of the following section:

23A.44.170. Nothing contained in this title shall be construed to limit or repeal additional requirements imposed by statute on corporations subject to the jurisdiction of state regulatory agencies.

Thus, the legislature has manifested an intent that state regulatory measures pertaining to corporations should not be nullified by the provisions of RCW 23A.20.060 (formerly RCW 23.01.500), but it has shown no inclination to make those provisions subordinate to local ordinances which may conflict with them. Such ordinances are, by constitutional provision, always subject to the laws of the state. Const. art. 11, § 11, declares:

Any county, city, town or township may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws.

The ordinance and the statute being in irreconcilable conflict, the trial court correctly held that the statute is controlling and that respondent was not required to pay a license fee for the unexpired period covered by the licenses previously issued to the corporations with which it had merged.

The judgment is affirmed.

HUNTER, C. J., HAMILTON, NEILL, STAFFORD, and SHARP, JJ., concur.

HALE, J. (dissenting)—The legislature will be disappointed, I think, to learn that, in enacting the Uniform Business Corporation Act in 1933, Laws of 1933, ch. 185, p. 770, it was not only dealing with the incorporation, regulation, merger and dissolution of private business corporations but it was also legislating with respect to the parking problem in Seattle. And I think its disappointment will continue unabated when it discovers that corporate merg-

ers accomplished pursuant to that same private Uniform Business Corporation Act, Laws of 1933, ch. 185, § 46 III, p. 805, will oust in part the licensing power of the City of Seattle and transfer it in substantial degree to private corporations.

The merger section of the Uniform Business Corporation Act in force when this case arose read:

> The surviving or new corporation, as the case may be, shall possess all the rights, privileges and franchises possessed by each of the former corporations so merged or consolidated except that such surviving or new corporation shall not thereby acquire authority to engage in any business or exercise any right which a corporation may not be formed under this chapter to engage in or exercise;

RCW 23.01.500(3).

Both the legislature and the City of Seattle could well assume, I think, that the comprehensive Uniform Business Corporation Act (RCW 23.01), had been enacted to enable three or more persons to organize and do business as a private corporation for profit. They had no way of anticipating—so divergent are the two subjects of legislation—that one day the courts would hold that the statute would also work a repealer of the city's power to regulate and license the operation of parking lots under the police powers of a city.

That RCW 23.01.500(3) was substantially reenacted and supplanted after the events of this case by RCW 23A.20.060(3), (4), matters little. What is of controlling importance, however, is that there is utterly no relationship whatever between the "rights, privileges and franchises" of RCW 23.01.500(3) mentioned in the Uniform Business Corporation Act and the parking garage ordinance of Seattle or the general licensing laws of Seattle. Any connection between statutes providing for the creation, organization and operation of private business corporations for profit and the Seattle ordinances regulating or raising revenue from parking garages must be deemed no more than a coincidence so wide apart are the two subjects. The court's opinion means, however, that the corporations statute now applies in case

of corporate merger with equal force to all licensed activities in which corporations engage, and that licenses will pass to the surviving corporation through the merger. In such licensed areas of business activity as cabarets, amusement devices, theaters, restaurants, or the carrying on of a trade or calling particularly identified with the public interest or affecting the public health and safety, a transfer of license can now be accomplished merely by resort to corporate merger under the private Uniform Business Corporation Act. It is a consummation, I think, never dreamed of by the legislature.

Actually, the corporations act has little or nothing to do with regulating parking garages in Seattle. It was enacted under the state's constitutional powers related to the formation, organization, liabilities and limitation upon private corporations under Const. art. 12. The city's power to regulate, license and receive revenue from parking garages derives from the provision of the state constitution which, granting the police power to cities, reads:

> Any county, city, town or township may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws.

Const. art. 11, § 11. The two enactments, having neither a common purpose nor aim, and not relating to the same subject matter, and being entirely different in nature, cannot, I think, be said to be and, therefore, ought not be construed as being in pari materia. 50 Am. Jur. *Statutes* § 350 (1944).

Thus, for example, where one statute empowered the court to order inspection of books and records and another statute authorized the court to fix the penalty of supersedeas bonds, the two enactments had no relationship to each other and could have no bearing on the judicial construction to be given the other. *State ex rel. Meehan v. Superior Court,* 193 Wash. 249, 74 P.2d 1012 (1938).

Conversely, it follows that statutes which relate to the same subject matter and the same things or persons, or classes of things or persons, are in pari materia and may be construed together. *State v. Houck,* 32 Wn.2d 681, 203 P.2d

693 (1949); *State ex rel. Chesterley v. Superior Court,* 19 Wn.2d 791, 144 P.2d 916 (1944); *Beach v. Board of Adjustment,* 73 Wn.2d 343, 438 P.2d 617 (1968).

Diamond Parking, Inc., United Parking, Inc., and City Parking, Inc., as three separate corporate entities, were separately licensed by the City of Seattle to operate public garages in the city; each had paid all license fees required by Seattle City Ordinance No. 48022, § 147 (1924), as amended by ordinance No. 83500 (Oct. 15, 1954) (Seattle City Code 10.40.020), for the period March 31, 1966, to March 31, 1967. The three separate legal entities, pursuant to the Uniform Business Corporation Act, merged October 20, 1966, into Diamond Parking, Inc., leaving that corporation as the surviving entity.

When Diamond Parking succeeded to ownership and assumed operation of the public garages of the two merged corporations, so far as city licensing was concerned, two of the licensees were no longer in esse; they had ceased to exist. In demanding that Diamond Parking obtain new licenses and pay the fees for the locations which had been operated by City Parking and United Parking prior to the merger, and for the remaining 6-month unexpired term of their licenses, the city was doing no more than its ordinance directed.

The ordinance, No. 48022, § 5 (Seattle Code 10.02.050), under which the licenses were originally issued, expressly prohibits the transfer of such licenses, making them non-transferable as follows:

> No license issued under the provisions of this chapter shall be transferable or assignable, unless specifically otherwise provided for.

Seattle Code 10.02.050. The three corporations applied for and received their parking garage licenses under the same ordinance, No. 48022, as amended, as follows:

> It shall be unlawful for any person to own, operate or maintain a public garage without having first obtained a license so to do, to be known as a "public garage license." The fee for a public garage license shall be, and the same is hereby, fixed, at the rate of five dollars per year for

each one thousand square feet of floor or ground space contained in such public garage and used for storage purposes.

Seattle Code 10.40.020.

It shall be unlawful to demand or collect any charge for parking or keeping of any motor vehicle in any public garage unless there is maintained at or near the entrance of said garage a sign designating each rate to be charged for such parking or keeping and the hours applicable thereto and the name of the licensee and such sign shall be clearly legible from a distance of fifty feet and adequate to apprise anyone entering for the purpose of using such garage of such rates; and it shall be further unlawful to charge any rate other than as designated on such sign; provided, that the provisions of this section shall not apply to rates determined by weekly, monthly or longer periods of time or to rates determined by written contract.

Seattle Code 10.40.040.

It is not questioned that the licensing of parking garages is a legitimate exercise of the police power. Seattle Code 10.40.030 (ordinance No. 48022, § 148), explicitly requires the licensee and his agents to keep the garage free from fire hazards; to comply with all building, health and sanitation laws; to notify the police of any parked vehicle which may have been stolen or employed in a crime; and to post publicly the parking rates. The court now implies that through corporate merger and consolidation—possibly of entirely disparate types of enterprises—private corporations may exercise the police power in licensing one another.

As I see it, the merger provision of the Uniform Business Corporation Act (RCW 23.01.500(3)), has not the remotest connection with or relevance to the exercise of the police power by the City of Seattle in regulating parking garages, curbing crime, and controlling traffic. We should thus apply the general principle that where there is conflict between two statutes, one of general application and the other particular and detailed, the particular will govern the general.

Where the Uniform Business Corporation Act, RCW 23.01 (now RCW title 23A), is a code of general applica-

tion, broadly applicable to all private business corporations within the state, the city ordinance (No. 48022) under which the City of Seattle seeks to exercise its police powers is a narrow piece of legislation, applicable only to persons and corporations who intend to operate public garages within the city limits. Thus, as between the two laws—one a statute of general application providing for the establishment, organization and conduct of private business corporations for profit, and the other a municipal ordinance designed under the state constitution to exercise the police powers with respect to parking garages—the local ordinance should prevail. *Edmonds School Dist. 15 v. Mountlake Terrace,* 77 Wn.2d 609, 465 P.2d 177 (1970). This comports with the general idea that, where the same or similar subject matter is covered by two statutes, one general and the other specific, the specific will control. *Airway Heights v. Schroeder,* 53 Wn.2d 625, 335 P.2d 578 (1959).

Nor do I concur in the court's assertion that a *new* business is not created by a merger of corporations, but an old one is merely continued. Actually, the merger creates a new legal entity and one sui juris, and it need not pursue its former business activities. Unless otherwise proscribed, the surviving corporation is under no limitations as to the kinds of lawful business activities in which it may engage. The court's opinion will allow the surviving corporate entity to enter a licensed field of activity without applying and qualifying for a license, for under the aegis of the Uniform Business Corporation Act it may achieve a licensed status simply by merger. This, as I see it, is contrary to our holding in *State ex rel. Don Williams Export, Inc. v. Timm,* 78 Wn.2d 520, 477 P.2d 15 (1970). See majority opinion, page 785.

There is nothing in the Uniform Business Corporation Act, as amended, to show that the legislature intended to curtail or affect the police powers of the state as delegated to cities or to supersede the jurisdiction of municipalities over parking, traffic and larceny of automobiles, automotive accessories and equipment. A governmental license con-

fers upon the licensee privileges to do acts which, without the license, would be unlawful. *State v. Lake City Bowlers' Club, Inc.,* 26 Wn.2d 292, 173 P.2d 783 (1946). Licenses are granted under the police power. *Pacific Tel. & Tel. Co. v. Seattle,* 172 Wash. 649, 21 P.2d 721 (1933). The requirement of a license necessarily involves reasonable controls and standards concerning who is eligible to receive it, and it must be reasonably designed to protect the public from injuries or damages the public might suffer from persons who are ineligible to be licensed. *Ellestad v. Swayze,* 15 Wn.2d 281, 130 P.2d 349 (1942).

Thus, the licensing authority has the power to prescribe reasonable conditions, standards and requirements for eligibility, make reasonable inspections to determine whether these standards and conditions are met and complied with, and deny or revoke the license. *Plumas v. Cosmopolis,* 128 Wash. 697, 223 P. 1052 (1924). That regulation of public parking garages by municipalities is a legitimate exercise of the police power is a well-established principle. *Annots.,* 40 A.L.R. 341 (1926); 55 A.L.R. 372 (1928); and 84 A.L.R. 1147 (1933). Necessarily included within these powers is the power to make the license nontransferable. In regulating parking garages, requiring a license for their operation and declaring the license nontransferable, the city is exercising the delegated police powers of the state. Const. art. 11, § 11; *Lenci v. Seattle,* 63 Wn.2d 664, 388 P.2d 926 (1964). If corporations may by merger alone transfer municipal licenses from one to the other, the licensing power of cities is to a substantial degree rendered negatory.

I do not think that the legislature intended in enacting the Uniform Business Corporation Act, or amending it, to impair or curtail this power.

The judgment should, therefore, be reversed.

FINLEY and McGOVERN, JJ., concur with HALE, J.

February 10, 1971. Petition for rehearing denied.