[No. 5374–1.   Division One.   August 7, 1978.]

JOHN E. MIKE, ET AL, *Respondents*, v. FRED THARP, JR., ET AL, *Appellants*, THE CITY OF SEATTLE, *Respondent*.

2

*Paul, Johnson, Paul & Riley* and *Blair F. Paul,* for appellants.

*Donald W. Marken* and *David J. Balint,* for respondents.

PEARSON, J.—This is an appeal from a defense verdict in favor of the City of Seattle, finding that the City was not liable for the tort of false arrest and imprisonment when its

policemen arrested a landlord and his son, Fred and Fritz Tharp, during a landlord–tenant dispute. Appellant landlord claims that it was error to permit the case to go to the jury and that a directed verdict in his favor ought to have been granted. He also contends that his case was made less effective because he was denied certain evidence and instructions by the trial court. We disagree and affirm.

Seattle police were called three times on Sunday, March 16, 1975, to settle a landlord–tenant dispute at 4132 – 25th Avenue S.W., in Seattle. The dispute arose when the Tharps locked their tenants, the Mikes, out of their house. The Mikes were renting the house from the Tharps for $100 a month, but due to chronic financial problems owed $305 in back rent as of February 1975. On March 1, Fritz Tharp, 17–year–old son of Fred Tharp, accepted $100 from the Mikes and agreed to forgive the past due rent in return for the Mikes' promise to vacate the premises.

The Tharps said that they assumed that the Mikes would move out in mid–March. Fritz and Fred Tharp checked the house on March 16 and found a lot of personal property still inside, a small amount of food in the refrigerator, a car parked in the drive, and the Mikes' dog penned in the backyard. The house was very dirty and had been unoccupied for at least 24 hours. The Tharps decided to confiscate the property. They changed the locks on the house and posted "no trespassing" signs. However, as they finished locking up the house, the Mikes arrived and demanded to be let in to the house to retrieve their belongings. They claimed that they had paid rent for March and did not intend to vacate the premises until March 30. The Tharps refused to open the house and left. On his way home, Fritz Tharp stopped at a police station and asked police to keep an eye on the property. Apparently not satisfied that the police could take care of the situation, Fritz drove back to the house and remained there to prevent entry by the Mikes.

By now several relatives of the Mikes had gathered in the street and police were called. They tried to settle the dispute, but were unable to make any progress; they called their supervisor, Sgt. Pillon, to the scene. Pillon demanded that Fritz Tharp unlock the house; Fritz refused. After 7 or 8 minutes of discussion, Pillon placed Fritz under arrest. In the meantime, police called Fred Tharp and asked him to tell his son to open up the house. Fred refused and angrily stated that he was coming out to the house. When he arrived and learned that his son had been arrested, he became even more upset. Sgt. Pillon then arrested Fred; a scuffle ensued, but Fred was finally put in a police car and taken to the station.

The Mikes brought suit against Fred Tharp, Jr., alleging violations of the landlord–tenant act (RCW 59.18 *et seq.*), the consumer protection act (RCW 19.86 *et seq.*), and also claiming assault, libel, slander, unjust enrichment, and replevin. Tharps counterclaimed for back rent and property damage. Fred Tharp, Jr., denied liability to the Mikes and together with his son, Fred Tharp III (Fritz), commenced a third–party suit against the City of Seattle claiming false arrest and false imprisonment. The Mike v. Tharp suit was settled for a small sum on the day of trial, in favor of the Mikes. The matter of attorney's fees, available under RCW 59.18.290, was left to the court's discretion. The attorney for the Mikes submitted his time sheets showing 64 hours of work put into the case, and stated that his normal hourly rate was $40. The court awarded him $1,000. Appellants Tharp contend that the trial court abused its discretion in making the award of attorney's fees because the Mikes' attorney presented no evidence to justify his claim other than his time sheets and hourly rate. The Tharps also appeal the unfavorable verdict in their third–party action against the City.

We first consider the Tharps' appeal from the defense verdict in favor of the City. Both Fred and Fritz Tharp were arrested on charges of obstructing a police officer. Seattle ordinance § 12A.20.020. Sgt. Pillon testified that he

arrested the Tharps because they refused to cooperate with him in settling their dispute with the Mikes and because he feared a violent confrontation between the Mikes and the Tharps.

The jury was given the following instruction:

> You are instructed that at all times material hereto there was in full force and effect in the City of Seattle an Ordinance providing:
> "A person is guilty of obstructing a public officer if he intentionally resists, delays or obstructs a person who he knows is a public officer and such officer is acting lawfully in a governmental function."

To assist the jury in understanding when an officer is "acting lawfully" the court also instructed the jury that:

> A police officer not only has the specific duty to enforce the law, but is also charged with the general duty and power to maintain the peace and quiet of the city.

█ The parties agreed that these instructions correctly state the law. The Tharps contend that under these instructions they were entitled to a directed verdict on the issue of whether Sgt. Pillon had probable cause to arrest the Tharps for obstructing a public officer. They insist that the matter between the Mikes and the Tharps was a civil dispute only and therefore the police had no authority to arrest.

> A motion for a directed verdict admits the truth of the evidence of the party against whom the motion is made and all inferences that reasonably can be drawn therefrom. In addition, such a motion . . . requires that the evidence be interpreted most strongly against the moving party and in the light most favorable to the opposing party . . . [T]he trial court can grant such a motion only when it can be held as a matter of law that there is no evidence, nor reasonable inference from the evidence, to sustain the verdict.

*Reiboldt v. Bedient,* 17 Wn. App. 339, 344, 562 P.2d 991 (1977); *Roberts v. Atlantic Richfield Co.,* 88 Wn.2d 887, 890, 568 P.2d 764 (1977).

The evidence, in the light most favorable to the City, shows that police were called to the scene of a landlord–tenant dispute by each party at least once. A small crowd, including relatives of the Mikes, had gathered in the street. Fritz Tharp, who had sought police intervention, was locked inside the house, refusing to allow the Mikes to enter and remove their property. Sgt. Pillon tried to talk Fritz into giving the Mikes their property, but Fritz was uncooperative and insolent. Then Fritz' father was called; he would not tell his son to open the house and very angrily stated that he was coming out to the scene. Pillon testified that based on his experience there was a substantial likelihood of a fight breaking out between the two families.

■ When police are called to the scene of a dispute which appears likely to erupt in violence, they are empowered to arrest those who attempt to breach the peace. *Pavish v. Meyers,* 129 Wash. 605, 607, 225 P. 633, 34 A.L.R. 561 (1924); 12 Am. Jur. 2d *Breach of Peace & Disorderly Conduct* § 4 (1964); 6A C.J.S. *Arrest* § 20(b) (1975). However, this is not the only option the police have; they may take other steps as are appropriate and reasonable to preserve the peace of the community. One of those steps may be an attempt to reconcile the parties or at least restore calm in hopes of averting an arrest. If one party persists in prolonging the dispute and is the obvious belligerent, the police may arrest him for obstructing them in the performance of their duty.

Having concluded that obstructing a public officer was a chargeable offense in this instance, and that there was sufficient evidence from which a jury might find that the police had probable cause to arrest the Tharps for this offense, it was proper for this court to deny the Tharps' motion for a directed verdict and to send the case to a jury. *See Sennett v. Zimmerman,* 50 Wn.2d 649, 314 P.2d 414 (1957). *State v. Vangen,* 72 Wn.2d 548, 433 P.2d 691 (1967); *Smith v. Drew,* 175 Wash. 11, 26 P.2d 1040 (1933).

■ Furthermore, the court did not abuse its discretion in rejecting the Tharps' proposed jury instructions[1] relating to breach of the peace and obstructing a public officer. The court's instructions, set forth above, contain the substance of the refused instructions, adequately and correctly state the law, and were sufficient to allow plaintiffs to argue their specific theories to the jury. No more is required. *Shea v. Spokane,* 17 Wn. App. 236, 245–46, 562 P.2d 264 (1977); *see* 2 L. Orland, Wash. Prac. § 253 (1972). We also note that general instructions are preferred over specific instructions. *State v. Bradley,* 20 Wn. App. 340, 581 P.2d 1053 (1978).

Plaintiffs next urge that the trial court erred in instructing the jury that

Fred Tharp and Fritz Tharp had no legal right to enter into the house involved in this lawsuit nor any right to keep their tenants, the Mikes, from regaining possession of their personal property and that such conduct by the plaintiffs was a violation of the landlord tenant act, however, such conduct was not in and of itself a criminal violation.

■ An issue in the case was whether the Mikes had abandoned their tenancy, giving the Tharps a right of entry and a right to retain personal property. RCW 59.18.150(2); RCW 59.18.130. The trial court ruled that there was no evidence that the Mikes intended to abandon the premises.

---

[1]Tharps' proposed instruction No. 9:

"You are instructed that a police officer has a general duty and power to maintain the peace and dignity of a community. However, a trespass, by a landlord, is, in and of itself, not a breach of the peace sufficient to amount to the crime of disturbance of the peace, but may be so if combined with other acts designed, or likely to lead to, a disturbance of the peace. It is the duty of a police officer, in preserving the peace and dignity of a community, to act against the party provoking or likely to cause a breach of the peace. Some affirmative act tending to lead to a breach of the peace is required before an officer may act."

Tharps' proposed instruction No. 10:

"There is no authority of a police officer to order a change of possession of property, failing which, a person may be guilty of hindering or obstructing an officer. A person may be guilty of hindering or obstructing an officer if he does some affirmative act preventing an officer from performing a lawful act."

*See* 51C C.J.S. *Landlord & Tenant* § 125 (1968). "Abandonment . . . involves an absolute relinquishment of premises by a tenant, and consists of act or omission and an intent to abandon." *Tuschoff v. Westover,* 65 Wn.2d 69, 73, 395 P.2d 630 (1964). "Abandonment must be proved by clear, unequivocal and decisive evidence." *Shew v. Coon Bay Loafers, Inc.,* 76 Wn.2d 40, 50, 455 P.2d 359 (1969). We agree that there was no substantial evidence from which a jury could find that the Mikes had abandoned the premises. *See Johnson v. Mobile Crane Co.,* 1 Wn. App. 642, 463 P.2d 250 (1969).[2]

■ During the course of cross–examination of Fritz Tharp, counsel for the City elicited Fritz' admission that he let the air out of the tires of the Mikes' car while it was parked outside the house. Fritz attempted to explain that his action was based on advice from a police officer whom he consulted regarding the dispute with the Mikes. The court disallowed the explanation on the ground that it lacked relevance. Appellant asserts that the trial court was wrong and that the evidence was relevant to show (a) Fritz Tharp's state of mind, and (b) the "collective mind" of the

---

[2]The Tharps relied on the following evidence to prove abandonment:

[THARP'S COUNSEL:] [Regarding a conversation held on March 1, 1975 in which the Mikes stated they were broke] Did you reach any agreement in regard to what would happen if they couldn't get this extra money?

[FRITZ THARP:] Yes. At that time I says, "Well, tell you what. I'll give you another couple days to extend yourself to try to find out if you're going to get this money or not, and, if you can't, just plan on being gone within a couple weeks."

[THARP'S COUNSEL:] Did they specifically agree in words or understand "a couple of weeks"?

[FRITZ THARP:] They said, "Okay."

[THARP'S COUNSEL:] Now, did anyone say, "Yes, we'll be out by the weekend of the 14th" or whatever, which would have been a couple of weeks?

[FRITZ THARP:] No, they didn't.

[THARP'S COUNSEL:] Did you say "the 14th"?

[FRITZ THARP:] No, I didn't say it in particular.

[THARP'S COUNSEL:] Is that what you understood it to be, though?

[FRITZ THARP:] Yes, I did.

Seattle Police Department concerning their authority to settle landlord–tenant disputes. We agree with the trial court that the evidence was irrelevant because it does not tend to prove or disprove an issue in the case. *See Lamborn v. Phillips Pac. Chem. Co.*, 89 Wn.2d 701, 706, 575 P.2d 215 (1978).

■ Fritz Tharp's state of mind at the time he let the air out of the tires has no bearing on whether or not the Seattle police had probable cause to arrest him. The act was accomplished before the police arrived and did not enter into their decision to arrest. "Probable cause is based upon the totality of facts and circumstances within the knowledge of the arresting officer." *State v. Cottrell*, 86 Wn.2d 130, 132, 542 P.2d 771 (1975). Likewise, the opinions of other police officers or the collective opinion of the Seattle Police Department as to their duties in settling landlord–tenant disputes were not relevant to show whether Sgt. Pillon, the arresting officer, had probable cause. *See State v. Todd*, 78 Wn.2d 362, 365, 474 P.2d 542 (1970).

Similarly, the trial court properly refused to admit in evidence certain Seattle Police Department training bulletins which contained departmental suggestions for settling landlord–tenant disputes as well as a brief discussion of landlord–tenant law. The Tharps attempted to show that Sgt. Pillon exceeded police guidelines as set out in the bulletins. Whether he had or had not was not material to the issue of probable cause. Introduction of these bulletins could only have confused the jury as to the legal standards in the case. *See generally Haysom v. Coleman Lantern Co.*, 89 Wn.2d 474, 573 P.2d 785 (1978).

In addition, we are asked to review the trial court's instruction regarding the burden of proof on the issue of probable cause to arrest. The trial court instructed the jury that probable cause was an affirmative defense and that the City had the burden of proving the facts essential to its defense. Counsel for the Tharps made no objection to these

instructions. Instead, he submitted his own instruction, which he regarded as "more appropriate."

The trial court has considerable discretion in wording instructions. *Levea v. G.A. Gray Corp.,* 17 Wn. App. 214, 562 P.2d 1276 (1977). Failing to object to an instruction and merely proposing a "more appropriate" alternate instruction does not adequately apprise the trial court of the issues involved and, therefore, waives any right to appeal. *Stark v. Allis–Chalmers,* 2 Wn. App. 399, 467 P.2d 854 (1970).

Finally, we consider the propriety of the attorney's fees awarded in favor of the Mikes. Whether a fee is reasonable must be determined on a case–by–case basis and a purely mechanistic formula amounts to an abuse of discretion. *Wolfe v. Morgan,* 11 Wn. App. 738, 524 P.2d 927 (1974). A number of factors should be considered, including: (1) time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the amount or the values involved and the results obtained; (3) the fee customarily charged for similar legal services; and (4) the experience, reputation, and ability of the lawyer or lawyers performing the services. *See State v. Mempa,* 78 Wn.2d 530, 536, 477 P.2d 178 (1970); *Key v. Cascade Packing Co.,* 19 Wn. App. 579, 585, 576 P.2d 929 (1978); (CPR) DR 2–106(B).

> The judge before whom the legal services are performed is in a peculiarly advantageous position to consider and evaluate the factors involved, and his determination will not ordinarily be disturbed absent a manifest abuse of discretion.

*State v. Mempa, supra* at 536; *Hsu Ying Li v. Tang,* 87 Wn.2d 796, 801, 557 P.2d 342 (1976).

It is apparent from the amount of the award that the trial court did not accept counsel's time sheets and hourly rate as the sole criteria of reasonableness, but relied on factors such as those set forth above. Based on the record before us, we cannot say that no reasonable person would reach the result arrived at by the trial court. Consequently,

we hold that the award of $1,000 attorney's fees to the Mikes was not an abuse of discretion. In addition to attorney's fees awarded at trial, the Mikes also request attorney's fees on appeal. RAP 18.1(a) states that attorney's fees on appeal are available in those cases where "applicable law grants to a party the *right* to recover reasonable attorney's fees or expenses on review". (Italics ours.) The comments to the rule state that the rule applies when "reasonable attorney's fees are allowed by law or contract." RCW 59.18.290 allows attorney's fees for landlord–tenant actions, which inferentially includes attorney's fees on appeal. Such awards are discretionary under the statute. The appellate issue is minor, and we decline to award appellate attorney's fees in this case.

The judgment is affirmed in all respects.

FARRIS, C.J., and DORE, J., concur.