[No. 3167–2. Division Two. June 20, 1979.]

CRAIG A. RITCHIE, ET AL, *Appellants,* v. THOMAS MARKLEY, ET AL, *Respondents.*

*Grant S. Meiner, Prosecuting Attorney, Craig Knudson, Deputy,* and *Craig A. Miller, City Attorney,* for appellants.

*Byron J. Holcomb,* for respondents.

REED, J.—The Clallam County Prosecutor appeals from a judgment of dismissal with prejudice in a suit to stop Thomas Markley from excavating and crushing rock on his own land without various permits. The principal issues are whether Markley's activities are exempt from state permit requirements under the State Shoreline Management Act

of 1971, RCW 90.58; whether Clallam County ordinance No. 44–1973 conflicts with state law and thus is unconstitutional; and whether the trial court abused its discretion in its award of attorney's fees to Markley. We affirm the trial court's determination as to all three issues.

In January 1977, Markley bulldozed a 50– by 120–foot pit on his land about 200 feet from the Dungeness River. He intended to make the pit into a reservoir for an irrigation system. He hired a backhoe operator to dig it out to an average depth of about 6 feet, and the pit filled with water by natural percolation.

Markley hired a gravel pit operator to bring in rock–crushing equipment to the pond to make gravel out of the excavated rock. After crushing about 900 cubic yards of rock, the equipment broke down in mid–February 1977. During the breakdown the equipment operator spread about 350 cubic yards of gravel along Markley's private access road, and sold about 350 cubic yards to his own customers. The operator testified that the gravel was sold to meet previous commitments and that he had to use Markley's gravel because he could not move his disabled equipment to his own gravel pit. Markley received no money for the sale of the gravel, and in fact paid the operator for all work done on the property.

On March 15, 1977, the Clallam County Prosecutor filed suit to enjoin the rock–crushing operation until Markley obtained permits under the Shoreline Management Act of 1971 (SMA), RCW 90.58; the State Environmental Policy Act of 1971, RCW 43.21C; and the Clallam County shoreline management ordinance No. 44–1973. At the same time the prosecutor obtained a temporary restraining order and order to show cause why a temporary injunction should not issue. The temporary restraining order was dissolved on April 1, 1977, when Markley stipulated he would discontinue his project pending trial.

After a nonjury trial the trial court dismissed the suit with prejudice. The county challenges the court's finding

that Markley's activities fell within the agricultural exemptions of SMA, and the court's conclusion that the county ordinance is unconstitutional by reason of a conflict with SMA. Markley cross appeals as to the amount of attorney's fees he received. We will deal with the issues in that order.

### SMA AGRICULTURAL EXEMPTIONS

■ Under SMA, no "substantial development" shall be undertaken on the shorelines of the state without first obtaining a permit from the local government having administrative jurisdiction under the act. RCW 90.58-.140(2). In defining the term, "substantial development," the act specifically exempts "agricultural service roads" and "irrigation systems" from the definition.[1] The meaning of each of these statutory terms is clear and it is merely a question of fact whether Markley's operations fall within the terms. *See Weyerhaeuser Co. v. King County,* 91 Wn.2d 721, 727, 592 P.2d 1108 (1979). We find that they do.

Although the thrust of the county's case was that Markley was excavating a commercial gravel pit, the record contains substantial evidence to support the trial court's finding that Markley had nothing more than an agricultural service road and an irrigation project on his land. For example, Markley testified that he always had intended his pond to be a reservoir for an irrigation system, and no evidence contradicted his claim. He had planted grass on the

---

[1]RCW 90.58.030(3)(e)(iv) and (viii) provide in part: "the following shall not be considered substantial developments for the purpose of this chapter:

" . . .

"(iv) Construction and practices normal or necessary for farming, irrigation, and ranching activities, including *agricultural service roads* and utilities on wetlands, and the construction and maintenance of irrigation structures including but not limited to head gates, pumping facilities, and irrigation channels: . . .

" . . .

"(viii) Operation, maintenance, or construction of canals, waterways, drains, *reservoirs,* or other facilities that now exist or are hereafter created or developed as a part of an *irrigation system* for the primary purpose of making use of system waters, including return flow and artificially stored ground water for the irrigation of lands." (Italics ours.)

land he hoped to irrigate, and had grazed his horses on the land. The service road gave access to the pastureland, and equipment driven over the road had been used to clear stumps and underbrush from the pastureland. Markley paid the contractor for all work done and received no money from the sale of rock crushed on his land. All these activities are consistent with farming rather than with the operation of a commercial gravel pit. We hold that the trial court was correct in concluding that Markley's service road and rock–crushing operation were exempt from the permit requirements of SMA.

### CONSTITUTIONALITY OF CLALLAM COUNTY ORDINANCE No. 44-1973

Clallam County's shoreline management act, unlike SMA, does not exempt agricultural activities from its permit requirements. The trial court determined this to be a conflict with the agricultural exemptions of SMA, and held the ordinance to be unconstitutional. We agree there is a conflict and so reject the county's challenge to the trial court's holding.

 Article 11, section 11 of the state constitution[2] forbids local governments to enact laws which conflict with the general laws of the state. See *State ex rel. Schillberg v. Everett Dist. Justice Ct.*, 92 Wn.2d 106, 108, 594 P.2d 448 (1979); *Spokane v. J–R Distribs., Inc.*, 90 Wn.2d 722, 730, 585 P.2d 784 (1978); *Diamond Parking, Inc. v. Seattle*, 78 Wn.2d 778, 781, 479 P.2d 47 (1971); *Bellingham v. Schampera*, 57 Wn.2d 106, 109, 356 P.2d 292, 92 A.L.R.2d 192 (1960). In determining whether a local ordinance conflicts with a state statute the question is "whether the ordinance permits or licenses that which the statute forbids and prohibits, *and vice versa.*'" (Italics ours.) *Bellingham v. Schampera, supra* at 111. A statute will not be construed

---

[2]Article 11, section 11 of the state constitution provides:

"Any county, city, town or township may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws."

to preempt the local government's power to legislate unless the intent is clearly and expressly stated. *State ex rel. Schillberg v. Everett Dist. Justice Ct., supra* at 108.

The specific question is whether SMA clearly and expressly forbids Clallam County from passing legislation to require shoreline development permits for agricultural activities that are exempt from state shoreline permit requirements. We believe the statute does preempt such local legislation, and that the county overstepped its constitutional limits in passing the ordinance.

As noted, SMA specifically allows irrigation projects and agricultural service roads to be built without a state permit in shoreline and wetland areas. The county shoreline ordinance, by contrast, allows no exemptions for agricultural activities. The two laws conflict because they reflect opposing policies. The SMA agricultural exemptions foster certain agricultural activities along shorelines and wetlands, and protect them from what the legislature evidently considered to be unnecessary administrative regulation. The ordinance thwarts the state's policy, because it grants the county power to deny permits for proposed agricultural activities in shoreline and wetland areas. The ordinance in effect allows the county to prohibit precisely what the statute unconditionally allows, and in so doing violates the state constitution. *See Diamond Parking, Inc. v. Seattle, supra* at 780–82. We hold that the trial court was correct in striking down the ordinance as unconstitutional.

## ATTORNEY'S FEES

The court awarded $150 to Markley for his attorney's fees which accrued before April 1, 1977, the date on which the temporary restraining order was dissolved by Markley's stipulation. On cross–appeal Markley argues that the trial court abused its discretion in denying him fees for the substantial legal costs he incurred after April 1, 1977. We decline to disturb the fee award.

As a matter of policy Washington courts consistently have refused to award attorney's fees as part of the

cost of litigation in the absence of a contract, statute or recognized ground of equity. *Hsu Ying Li v. Tang,* 87 Wn.2d 796, 797–98, 557 P.2d 342 (1976). The trial court in this case based Markley's fee award on the rule of equity stated in *Cecil v. Dominy,* 69 Wn.2d 289, 293, 418 P.2d 233 (1966).

> If injunctive relief is the sole purpose of the suit, and a temporary injunction has issued upon notice and hearing pending trial on the merits, *counsel fees are recoverable as damages resulting from the temporary injunction if the injunction be dissolved at trial.*

(Italics ours.) Contrary to Markley's assertions, the above rule does not entitle a successful defendant to recover all attorney's fees incurred in defending against injunctive relief. Its purpose is to deter plaintiffs from seeking unnecessary preliminary injunctions or restraining orders pending trial, and accordingly it authorizes recovery only of those fees which a defendant incurs in dissolving a wrongfully issued *preliminary* injunction or restraining order. *See Collins v. Huffman,* 48 Wash. 184, 192–93, 93 P. 220 (1908); *Donahue v. Johnson,* 9 Wash. 187, 190–91, 37 P. 322 (1894). The point at which the wrongfully issued court order is dissolved is the point at which attorney's fees cease to be recoverable—whether the court order be a preliminary injunction dissolved by trial on the merits, *see Talbot v. Gray,* 11 Wn. App. 807, 812, 525 P.2d 801 (1974); *Kelly v. Schorzman,* 3 Wn. App. 908, 914, 478 P.2d 769 (1970), or a temporary restraining order dissolved by a defendant's motion and hearing, *see Berne v. Maxham,* 82 Wash. 235, 144 P. 23 (1914), or a temporary restraining order dissolved by stipulation of the parties, as was the case here.

As we interpret the *Cecil* rule, Markley is ineligible for attorney's fees accruing after April 1, 1977, because there was no preliminary injunction wrongfully issued and ultimately dissolved at trial. *See Talbot v. Gray, supra.*[3]

---

[3]Admittedly, Markley's stipulation had the same practical effect as a preliminary injunction. The critical difference however, is that after the stipulation

■ Markley presents a second reason for his claim for attorney's fees. He contends that RCW 90.58.230 allows a trial court in its discretion to grant attorney's fees to the prevailing party in a suit seeking injunctive relief under SMA. Markley reads the term, "prevailing party," out of context. The statute provides in pertinent part:

If liability has been established for the cost of restoring an area affected by a violation the court shall make provision to assure that restoration will be accomplished within a reasonable time at the expense of the violator. In addition to such relief, including money damages, the court in its discretion may award attorney's fees and costs of the suit to the prevailing party.

RCW 90.58.230. By its own terms the statute allows attorney's fees merely as an incidental and discretionary part of the damages assessable against a defendant found to have violated SMA. The statute does not grant trial courts the discretion to award attorney's fees to a prevailing party such as Markley, who successfully has resisted an effort to obtain an injunction.

We hold that the trial court correctly limited Markley's attorney's fee award to reflect only those services employed in dissolving the temporary restraining order. Based on the record submitted, we cannot say the trial court abused its discretion in awarding $150 for the attorney's services rendered before April 1, 1977, and thus we are without grounds to modify the fee award. *Mike v. Tharp,* 21 Wn. App. 1, 10, 583 P.2d 654 (1978).

The trial court's judgment of dismissal and its award of

---

Markley's restraint was voluntary. By stipulating, Markley indicated that he considered the county's demands to be too insignificant to justify a protest in court. He cannot now recover damages from the county for his own voluntary pretrial work stoppage. We note that the stipulation itself contains an agreement by the parties that "this order is not a preliminary injunction against the defendant, Tom Markley."

attorney's fees are affirmed.

PEARSON, C.J., and PETRIE, J., concur.